UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANNER JONATHEN DAVIS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 1:26-cv-05041-KES-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO GRANT DEFENDANT'S CROSS MOTION, TO AFFIRM THE DECISION OF THE COMMISSIONER, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Docs. 15, 18)** |

## I. Introduction

Plaintiff Tanner Jonathan Davis seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do support the Agency's non-disability finding.

## II. Procedural Background

The ALJ set forth the procedural background as follows:

> On January 20, 2023, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 10, 2019. The claim was denied initially on August 29, 2023, and upon reconsideration on December 17, 2024. Thereafter, the claimant filed a written request for hearing, which the agency received on January 2, 2025 (20 CFR 404.929 et seq.). The claimant appeared and testified at a hearing by audio using a telephone (20 CFR 404.936(c)) on June 18, 2025. Heidi Paul, an impartial vocational expert, also participated by audio using a telephone. The claimant is represented by Jonathan Omar Pena Mancinas, an attorney, and Nicholas

Martinez, a non-attorney representative. Nicholas Martinez appeared at the hearing.

AR 15.

On August 5, 2025, the ALJ issued an unfavorable decision. AR 12–32. On May 13, 2026, the Appeals Council denied review. AR 1–6. On June 30, 2026, Plaintiff filed the instant complaint.

**III. Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. See Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is

susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). However, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and post hoc rationalizations are not to be considered. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). See Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). Moreover, the Court's review is limited to the reasons actually cited by the ALJ in his decision. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.")

**IV. The Five Step Sequential Evaluation Process**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. See Tackett v. Apfel, 80 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. §

423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. See 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See, Tackett v Apfel, 180 F.3d 1094 at 1098-99 (9th Cir. 1999); see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. See Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. See id. at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098,

1100; Reddick v. Chater, 157 F.3d 715 at 721 (9th Cir. 1998); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing [*4] in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Importantly, "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984); see Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980) (testimony of vocational expert must be reliable in light of medical evidence in order to qualify as substantial evidence).

Further, when a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). As stated above, "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that "The claimant has not engaged in substantial gainful activity since August 7, 2020, the amended alleged onset date. (20 CFR 404.1571 *et seq.*)." AR 17. At step two, the ALJ found that, "The claimant has the following severe impairments: nephrolithiasis, hydronephrosis, congenital ureteropelvic junction obstruction, asthma, obesity,

and degenerative joint disease of the bilateral knees (20 CFR 404.1520(c)).” AR 17.

At step three, the ALJ found that “The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).” AR 19.

Prior to step four, the ALJ evaluated Plaintiff's RFC and concluded as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently climb, balance as that term is defined in the Dictionary of Occupational Titles (DOT), stoop, kneel, crouch, and crawl, and must avoid concentrated exposure to hazards and atmospheric conditions.

AR 19.

At step four, the ALJ found “The claimant has no past relevant work (20 CFR 404.1565).” AR 23.

At step five, relying on the VE's testimony, the ALJ found that, “Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).” AR 23. Specifically, the jobs identified by the VE were: cleaner, window; waxer, floor; and cleaner, wall. AR 24.

Accordingly, the ALJ concluded that “The claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2019,[1] through the date of this decision (20 CFR 404.1520(g)).” AR 24.

## VI. Issue Presented

Plaintiff asserts one claim of error: “The RFC is not supported by substantial evidence.” MSJ at 2 & 10, Doc. 15.

---

[1] This was the original alleged onset date, not the amended alleged onset date of August 7, 2020. AR 15.

**A. The RFC**

**1. RFC Law, Generally**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins, 466 F.3d at 883. See also 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC," Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015), and "must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence," Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999). "Moreover, the ALJ must use some medical evidence of the claimant's ability to function in the workplace in order to make a proper RFC assessment[.]" Kalinich v. Kijakazi, No. 2:22-cv-00859-DJA, 2023 U.S. Dist. LEXIS 86331, 2023 WL 3505513, at *4 (D. Nev. May 17, 2023) (quotations omitted); see also Program Operations Manual System (POMS) DI 24510.001(A)(1), available at

https://secure.ssa.gov/poms.nsf/lnx/0424510001 [*7] ("The RFC . . . is based primarily on medical evidence."). "[A]n ALJ's RFC determination need not reflect any particular provider's opinion precisely. Still, an ALJ cannot make medical judgments, only legal judgments," and "[b]arring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." Howell v. Kijakazi, No. 20-cv-2517-BLM, 2022 U.S. Dist. LEXIS 125714, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (citations omitted).

In addition, an ALJ's decision is not supported by substantial evidence when the ALJ does not "explain the evidentiary basis" for an aspect of their RFC assessment. Leitz v. Kijakazi, No. 22-35356, 2023 U.S. App. LEXIS 16901, 2023 WL 4342114, at *2 (9th Cir. July 5, 2023); see also Alejandro H. v. Bisignano, No. 2:25-cv-01135-PD, 2026 U.S. Dist. LEXIS 71580, 2026 WL 891605, at *3 (C.D. Cal. Mar. 31, 2026) ("The ALJ's failure to 'build an accurate and logical bridge' from the record to his RFC assessment, and failure to 'provide sufficient reasoning' precludes the Court from conducting meaningful review.") (quoting Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020)). "When reviewing the ALJ's decision, the Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Alejandro H., 2026 U.S. Dist. LEXIS 71580, 2026 WL 891605, at *3; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The court "cannot substitute [its] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)).

### 2. Analysis

Plaintiff's argument appears to have 4 main points, which overlap at times. They are: **1-** the ALJ cited wide swaths of lengthy exhibits without pin citations; **2-** the ALJ failed to properly address SSR 18-3p; **3-** the ALJ harmfully erred by failing to consider whether Plaintiff "would equal Listing 6.06 given his extensive medical record" (MSJ at 13); and, **4-** the ALJ "harmfully

erred by failing to even address or consider Mr. Tanner's specific statement at the hearing explaining why he had good cause for refusing surgery" and, "by failing to even consider Mr. Tanner's testimony regarding why he had good cause for leaving the hospital against medical advice despite his flank pain." MSJ at 15-16

**a. Citing Wide Swaths of Exhibits**

Plaintiff begins by identifying the following language from the ALJ's decision:

> The prior administrative finding at the reconsideration level regarding the claimant's physical impairments that the claimant is capable of modified medium work is persuasive (Exhibit 5A). The finding is consistent with evidence showing numerous visits to emergency rooms and urgent care, with the claimant often leaving prior to examination and treatment, the claimant not following up with recommended urological treatment, and the claimant's generally normal physical examinations (Exhibits 4F, 6F, 20F, 30F, 32F, 34F, 37F). The finding is supported by the narrative explanation and overall analysis of the medical evidence of record.

MSJ at 10-11 (quoting AR 23).

The following is Plaintiff's critique of that identified language:

> The ALJ's medium RFC is not supported by substantial evidence, as the ALJ's extremely vague "discussion" of the PAMF findings fails to identify the specific of the "narrative explanation and overall analysis of the medical evidence of record" in "Exhibit 5A" other than broad citations to wide swaths of seven Exhibits, in their entirety, absent any pinpoint citations, constituting over 800 pages of medical records spanning nearly six years from 2019-2026 for the generalized findings of "numerous visits to emergency rooms and urgent care, with the claimant often leaving prior to examination and treatment," "the claimant not following up with recommended urological treatment," "and the claimant's generally normal physical examination."

MSJ at 11.

Here, when finding the prior administrative medical findings (PAMFs) persuasive at the end of the ALJ's decision, the ALJ was merely encapsulating facts that had already been covered, so it was unnecessary to repeat the pin citations again. This is made clear in the ALJs following discussion:

> The claimant has a history of <u>refusing treatment in emergency rooms</u> when he is not given IV opiate medication for his pain (Exhibits 4F9, 35F1). He

> regularly seeks treatment for abdominal/right flank pain in emergency rooms and urgent care clinics, but <u>has not followed up on treatment/surgery recommended by urology</u> to address his kidney pain (Exhibit 6F, 34F3). In 2024 and 2025 the claimant reports not being able to communicate with his kidney specialist (Exhibit 34F1).
>
> In the emergency room, the claimant <u>refuses to cooperate with physical examination and leaves against medical advice</u> when he does not get the drugs he wants (Exhibits 30F12; 32F37, 34F2-3; 63F4). He also demands pain medications <u>but refuses to give urine samples, then elopes</u> (Exhibit 34F25). He also elopes once he receives narcotics (Exhibit 30F55; 32F2, 23; 62F; 63F141, 248). His mental status exams are unremarkable (Exhibit 34F2)
>
> The claimant has presented for right flank pain and then <u>eloped from the emergency room prior to treatment multiple times</u>, sometimes multiple times in a week (Exhibit 32F52, 69). In September 2024 the claimant was seen in the hospital on September 26, 2024, and received IV Dilaudid; he returned to the emergency room the next day, and eloped when he did not receive pain medication (Exhibit 30F). He sought emergency room care on September 28, 2024, stating he had abdominal pain and vomiting, was out of Norco and was awaiting a refill, and requesting IV narcotic medications (Exhibit 31F229). The claimant refused oral oxycodone and eloped (Exhibit 31F230).

AR 20–21 (emphasis added).

These are the specific examples the ALJ was referencing to in the subsequent encapsulation of the evidence.

**b. <u>SSR 18-3p</u>**

**/1/ <u>The Law, Generally</u>**

If the ALJ has found that the claimant is disabled, but finds that the claimant failed to follow a prescribed treatment, the Agency advises that the ALJ conduct an inquiry pursuant to Social Security Ruling 18-3p, 2018 SSR LEXIS 1. *See Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995), *as amended* (Oct. 23, 1995) (holding that predecessor rule to 18-3p, 2018 SSR LEXIS 1"only appl[ies] to claimants who would otherwise be disabled within the meaning of the Act."); *Molina v. Astrue*, 674 F.3d 1104, 1114 n. 6 (9th Cir. 2012) (regarding SSR 18-3p, 2018 SSR LEXIS 1's predecessor); *Flores v. Dudek*, No. 1:24-CV-01377-SKO, 2025 U.S. Dist. LEXIS 76638, 2025 WL 1167819 at *4 n. 5 (E.D. Cal. Apr. 22, 2025).

SSR 18-3p, 2018 SSR Lexis 1 "provide[s] guidance on how [SSA] appl[ies] our failure to

follow prescribed treatment policy in disability and blindness claims under titles II and XVI of the Social Security Act (Act)." *See* Soc. Sec. Ruling, SSR 18-3p, 2018 SSR LEXIS 1; Titles II & XVI: Failure to Follow Prescribed Treatment, WL 4945641 (S.S.A. Oct. 2, 2018) ("SSR 18-3p"). "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations omitted). They "reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Id.* (alterations in original) (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)). SSR 18-3p, 2018 SSR LEXIS 1 provides, in relevant part:

> "We will determine whether an individual has failed to follow prescribed treatment only if all three of the following conditions exist:
>
> 1. The individual would otherwise be entitled to benefits based on disability or eligible for blindness [*13] benefits under titles II or XVI of the Act;
>
> 2. We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and
>
> 3. We have evidence that the individual did not follow the prescribed treatment. If all three conditions exist, we will determine whether the individual failed to follow prescribed treatment, as explained below."
>
> SSR 18-3p, 2018 SSR LEXIS 1, 2018 WL 4945641 at *2-3.

Thereafter, if these conditions are met, the Agency then determines whether the individual has failed to follow the prescribed treatment. 2018 SSR LEXIS 1, [WL] at *4. To make this determination, the ALJ engages in a two-step assessment. First, the ALJ evaluates whether the prescribed treatment, if followed, would be expected to restore the individual's ability to engage in substantial gainful activity. *Id.* To make this determination, the Rule instructs the ALJ to

"consider all the relevant evidence in the record." *Id.* If the ALJ finds that the prescribed treatment would be expected to restore the claimant's ability to engage in substantial gainful activity, only then will the ALJ evaluate whether the claimant has good cause for not following the prescribed treatment. *Id.*

The Rule places the burden [*14] on the individual to establish good cause for failing to follow prescribed treatment. Id. SSR 18-3p, 2018 SSR LEXIS 1 provides a non-exhaustive list of "examples of acceptable good cause reasons for not following prescribed treatment" including religion, cost, medical disagreement, intense fear of surgery, prior history of the prescribed treatment being unsuccessful, high risk of loss or limb, risk of addiction to opioid medication, and other reasons to be evaluated as good cause on a case-by-case basis. 2018 SSR LEXIS 1, [WL] at *6. If the ALJ finds that the claimant has not established good cause for their failure to follow prescribed treatment, the ALJ proceeds to evaluate the claim through the remaining steps in the sequential evaluation process by determining the claimant's RFC. Id.

**/2/ Analysis**

Here, and most importantly, it has not been established that Plaintiff was an individual who would have otherwise been entitled to disability benefits.

As Defendant correctly explains:

> Plaintiff's challenge to the ALJ's findings demonstrates a misunderstanding of SSR 18-3p. See ECF No. 15 at 13. SSR 18-3p provides that, under the Social Security Act, "an individual who meets the requirements to receive disability or blindness benefits will not be entitled to these benefits if the individual fails, without good cause, to follow prescribed treatment that we expect would restore his or her ability to engage in substantial gainful activity (SGA)." 2018 WL 4945641, at *2 (emphasis added). But the ALJ did not find that Plaintiff was disabled but for his failure to follow treatment advice—the ALJ found Plaintiff not disabled. AR 24.
>
> Resp. at 6 (emphasis added).

Despite seemingly conceding Defendant's point, Plaintiff continues:

> It is acknowledged that the ALJ did not make a definitive finding that Plaintiff was entitled to disability benefits but for his failure to follow medical advice. However, the decision is replete with the ALJ's analysis that the medium RFC determination and the rejection of Mr. Tanner's symptomology allegations was based on his failure to follow medical advice regarding treating his severe kidney-related impairments, including his repeated elopements from the hospital and failure to undergo recommended surgery, as detailed supra. (e.g., AR 22) Further, the ALJ specifically stated at step three that Mr. Davis did not "meet" the requirements for Listing 6.06 because he "has not had hospitalizations for his ureteropelvic junction impairment that meet the requirements of listing 6.06" (AR 19). Further, the ALJ harmfully erred by failing to consider whether Mr. Tanner would equal listing 6.06 given his extensive medical record but for his non-compliance with medical advice and underwent hospitalizations that would equal the requirements of listing 6.06, as there was extensive documentation of Proteinuria (protein in the urine) (AR 1602-1604; 1617-1619; 1623-1625; 1636-1638; 1642-1644; 3137, 3130, 3123, 3119, 3141, 3144, 3147, 3175, 3171, 3164, 3159, 3155, 3151; 3329-3330 3829-3831) and a "chronic obstruction," right hydronephrosis, a congenital right junctional malformation ("UVJ") requiring surgical correction. (AR 359-360, 368, 381, 422; 711-712; 907-908; 1527-1528; 913, 1512, 1529, 1572, 576, 1580-1582; 1533, 1539, 1554, 1560, 1548, 1555, 1561, 1566, 1569, 1572, 1577, 1583, 1990-1991, 1886, 4095, 6053, 6054).
>
> As such, the ALJ *implicitly* determined at steps three and five, that but for Mr. Tanner's failure to follow prescribed surgical treatment and failure to stay at the hospital to complete treatment, Mr. Tanner would have been found disabled, which triggers the ALJ's duty to apply the factors in SSR 18-3p.

MSJ at 13-14 (emphasis in original)

Here, Plaintiff's argument seems to suggest that the ALJ "essentially" or "implicitly" found that Plaintiff <u>would be disabled</u> but for his treatment non-compliance. But this assertion is both unclear and unsupported.[2] SSR 18-3p is not implicated simply because an ALJ references treatment non-compliance. Treatment non-compliance is most often referenced as a basis to discredit a Plaintiff's claimed symptom severity. For example, in the case of <u>Serna v. King</u>, (No. 25-cv-01307-NW, 2026 U.S. Dist. LEXIS 61175, at *15 (N.D. Cal. Mar. 23, 2026)), there was no mention by the Court of SSR 18-3p, only a finding that the ALJ appropriately relied on evidence of treatment non-compliance in assessing the claimant's credibility. More specifically, a claimant's unexplained, or inadequately explained, failure to seek treatment or follow a

[2]It's also not clear how Listing 6.06 fits into the argument at this point, but it is addressed below.

prescribed course of treatment may be the basis for an ALJ's adverse credibility finding unless the claimant shows good reason for the failure. Orn v Astrue, 495 F.3d 625 at 638 (9th Cir., 2007).

In sum, Plaintiff incorrectly relies on Social Security Ruling 18-3p. Ruling 18-3p does not apply here because the ALJ did not find that Plaintiff was an individual who "would otherwise be entitled to benefits based on disability." SSR 18-3p, 2018 SSR LEXIS 1, 2018 WL 4945641 at *2-3. As the ALJ concluded, Plaintiff did not have an impairment or combination of impairments that medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526. See, AR 19

If however, Plaintiff's main point is that the ALJ did not adequately consider Plaintiff's "good cause" for treatment non-compliance, that is discussed below.

### c. **<u>Listing 6.06</u>**

Plaintiff provides the following discussion concerning Listing 6.06:

> Further, the ALJ harmfully erred by failing to consider whether Mr. Tanner would equal listing 6.06 given his extensive medical record but for his non compliance with medical advice and underwent hospitalizations that would equal the requirements of listing 6.06, as there was extensive documentation of Proteinuria (protein in the urine) (AR 1602-1604; 1617-1619; 1623-1625; 1636-1638; 1642-1644; 3137, 3130, 3123, 3119, 3141, 3144, 3147, 3175, 3171, 3164, 3159, 3155, 3151; 3329-3330 3829-3831) and a "chronic obstruction," right hydronephrosis, a congenital right junctional malformation ("UVJ") requiring surgical correction. (AR 359-360, 368, 381, 422; 711-712; 907-908; 1527-1528; 913, 1512, 1529, 1572, 576, 1580-1582; 1533, 1539, 1554, 1560, 1548, 1555, 1561, 1566, 1569, 1572, 1577, 1583, 1990-1991, 1886, 4095, 6053, 6054).
>
> MSJ at 14.

Defendant counters as follows:

> Plaintiff additionally argues, unrelated to the RFC assessment, that the ALJ somehow erred by not considering whether Plaintiff equaled Listing 6.06 (nephrotic syndrome). ECF No. 15 at 13–14. Plaintiff ignores the detailed, demanding criteria and thresholds of Listing 6.06 and simply avers that he equaled it because he had unspecified protein in urine and chronic obstruction requiring surgical correction. Id. at 14; see generally 20 C.F.R. Part 404, Subpart P, App. 1 § 6.06 (listing criteria)

Resp. at 6–7.

Here, Plaintiff cites many examples of unspecified proteinuria, but Listing 6.06 has very exacting requirements which Plaintiff does not explain how he meets them. These requirements are:

> (A) Laboratory findings as described in 1 or 2, documented on at least two occasions at least 90 days apart during a consecutive 12—month period:
>
> 1. Proteinuria of 10.0 g or greater per 24 hours; or
> 2. Serum albumin of 3.0 g/dL or less, and
>    a. Proteinuria of 3.5 g or greater per 24 hours; or
>    b. Urine total-protein-to-creatinine ratio of 3.5 or greater.
>
> AND
>
> (B) Anasarca [general swelling or massive edema] . . . persisting for at least 90 days despite prescribed treatment.
>
> 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 6.06

Plaintiff also references hospitalizations, but as set forth in Listing 6.09, Plaintiff must have, "Complications of chronic kidney disease (see 6.00C8) requiring at least three hospitalizations within a consecutive 12–month period and occurring at least 30 days apart. Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization" (20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 6.09. Again, Plaintiff fails to explain how he meets this criteria.

In sum, Plaintiff having proteinuria and hospitalizations is not sufficient to meet the exacting requirements contained in Listings 6.06 and 6.09, or to medically equal the severity of those listings. More specifically, Plaintiff does not identify any proteinuria metrics in the records as required in Listing 6.06, nor does he identify where in the record there is mention of anasarca

(body swelling), and nor does he set forth the duration and frequency of hospitalizations.

"Importantly, it is the claimant that bears the burden of proving that he has an impairment that meets or medically equals the criteria of a listing." Reedom v. Comm'r of Soc. Sec., No. 1:21-CV-01645-SAB, 2022 WL 17406415, at *7 (E.D. Cal. Dec. 2, 2022) (citing Burch, 400 F.3d at 683); see also Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("Lewis has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment.").

**d. Testimony Regarding Treatment Non-Compliance**

An ALJ may consider "an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." See Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017).

"Typically, an ALJ will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Serna v. King, No. 25-cv-01307-NW, 2026 U.S. Dist. LEXIS 61175, at *15 (N.D. Cal. Mar. 23, 2026) (citing Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Plaintiff explains as follows:

> Further, it is documented throughout the record that Mr. Tanner declined surgery due to financial issues and "reluctance" to have a post-operative stent due to his inability to tolerate a stent, due to the painful nature of the procedure and the fact that it had not been successful in the past, which are examples of good cause for failure to follow medical treatment. (AR 381, 416, 420, 422, 1089, 1985-1986).

MSJ at 14–15.

More specifically, Plaintiff contends that the ALJ "harmfully erred by failing to even address or consider Mr. Tanner's specific statement at the hearing explaining why he had good cause for refusing surgery." MSJ at 15.

The relevant testimony in question is as follows:

> I had a nephrostomy bag put inside of me, leave the pressure because the kidney kink up and it won't drain from my UBJ obstruction. It's a small ureter in my pathway, so like the tube so small my kidney can't drain and it kinks up, so they put a nephrostomy bag so it can drain. And even then, they were scared because they said that when they take the nephrostomy bag out of my side because they put a hole in the side of my kidney, they said that my kidney might pop again because it might kink again and cause pressure. So I've been very scared over that. I've had stents put in me. They tell me I'm too young and I can't have stents put in me because I spasm them out. I spasm the stent out like I want to say less than eight hours after they put it in me. (AR 44).

MSJ at 15 (quoting AR 44).

Here, the ALJ did acknowledge testimony to this effect when stating, "The claimant stated he has had a couple of procedures done for his kidney, including a nephrostomy bag and stents. He stated he 'spasms' the stents out." See, AR 20

In addition, the ALJ acknowledged objective evidence of stent complications, including that Plaintiff was subsequently offered a non-stented pyeloplasty, but that he did not schedule it:

> The claimant has chronic kidney problems that are managed with stents. He has been treated for repeat ureteropelvic junction obstruction (Exhibit 6F9, 16). In July 2019 the claimant reported that he had had a stent placed in May of 2019 and then had severe spasms and the stent had to be removed (Exhibit 52F2). The claimant was seen in the emergency room in July 2019 and August 2019 and given IV opiates for pain from his congenital UPJ obstruction (Exhibit 53F).
>
> The claimant was seen by UCLA urology in August 2019 and cystoscopy, right retrograde pyelogram, right stent placement and right robotic dismembered pyeloplasty were recommended (Exhibit 52F14). He was seen in UCLA urology in November 2020 and it was noted that he had declined to undergo recommended surgery in January 2020, and that he has been in chronic pain and is on Norco ½ tablet daily, and has been to the emergency room several times for pain. An option to have a non-stented pyeloplasty was offered and the claimant wanted to do the procedure without a stent though there was a potential higher rate of failure (Exhibit 6F9). The claimant was called to schedule surgery and the claimant stated he is not ready to schedule surgery and will call to schedule. In 2023 the claimant reported being unable to see a urologist due to insurance issues (Exhibit 26F28).

AR 21 (emphasis added).

Further, these were not the only examples, or even the primary examples, of treatment non-compliance. As discussed above, the ALJ emphasized Plaintiff's refusal to undergo physical examination or provide urine samples at the emergency department, and his routinely leaving

against medical advice (AMA) once he received IV narcotics or when he was denied IV narcotics. AR 21.

As to leaving AMA, Plaintiff contends the ALJ failed to consider the following testimony:

> Yes, I -- I would love to address that. So a lot of these doctors, like I said in the beginning, they call me a transient and they call me a tweaker, and they're so busy. They literally tell me to go to a different hospital to get seen, that it would be faster, and then they just stick me in the waiting room standing up, and I'd get sick throwing up everywhere, or I'd fall and faint over, and they would do nothing to help me. They would blame me like I'm there with nothing. Like I have a diagnosis. I have a kidney issue. I have an issue. You know what I mean? Like they -- they're making it seem like there's nothing wrong with me. So they'd send me to another hospital, or they tell me just go back home, and you know, I've went to the hospital and I've asked for, you know, the medical director to talk to them. A lot of these sign leave medical advice. I would love to see the signature. I-- I don't feel like half of them are my signatures because, you know, these doctors are telling me to go home or go to a different hospital, you know what I mean? If a doctor tells me to do something and they tell me they're not going to help me, I'm probably going to do what they say. You know what I mean? Like I-- they're not going to help me, you know, like I don't know what else to do. They insist on my oral medication when I'm vomiting (AR 48) How am I supposed to take oral -- oral medication if I'm throwing it up? And then I explain that to my doctor and the doctor understands it. They're like that makes no sense. If you're telling them you're throwing up your medicine, they should at least help you, and they don't. (AR 49).

MSJ at 15–16.

Interestingly, following this quote Plaintiff concludes his brief without explaining what this testimony supposedly demonstrates. Thus, without a clearer explanation from Plaintiff as to the relevance and meaning of this testimony, the ALJ was justified in relying solely on provider notes indicating he left AMA.

## VII. Conclusion

In sum, the ALJ appropriately relied on Plaintiff's failure to follow treatment recommendations, refusing physical examination and urine samples at the hospital, and leaving the hospital AMA after receiving IV narcotics or after being denied narcotics. The ALJ also appropriately relied on the prior administrative medical findings (PAMFs) which supported the

RFC.

Thus, the ALJ did not err in making a non-disability finding, which included a finding of treatment non-compliance, omitting discussion of SSR 18-3p, and finding Plaintiff's impairments did not meet or medically equal Listing 6.06.

**VIII. Findings and Recommendation**

For the reasons stated above, substantial evidence and applicable law do support the Agency's non-disability finding. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, be **DENIED**
2. Defendant's Cross Motion, ECF No. 18, be **GRANTED**
3. The final decision of the Commissioner of Social Security be **AFFIRMED**
4. That the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff

**IX. Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **November 25, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE